## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

DIANNE M. MURRAY,                          *
                                           *
      Plaintiff,                  *
                                           *
                                           *          Civil Action No. 8:21-cv-00390-PX
    v.                              *
                                           *
NATIONAL INSTITUTES OF HEALTH,             *
                                           *
      Defendant.                  *
                                           *
                 ***

## <u>MEMORANDUM OPINION</u>

Pending before the Court in this disability discrimination action is the unopposed Motion to Dismiss filed by Defendant National Institutes of Health ("NIH"). ECF No. 13. No hearing is necessary. *See* D. Md. Loc. R. 105.6. For the reasons that follow, the motion is GRANTED and the Complaint is dismissed without prejudice.[1]

### I.  Background[2]

During the relevant years 2011 to 2018, Plaintiff Dianne M. Murray ("Murray") worked as a Clinical Research Nurse for the National Institutes of Health's Clinical Center in Rockville, Maryland ("NIH"). ECF No. 1 at 3, 7. Murray suffers from Hidradenitis Suppurativa. ECF No. 1-1 at 1. She takes pain medication and requires ongoing care for this condition. She worked the night shift at NIH, presumably so she could attend frequent doctor appointments. *See* ECF No. 1

---

[1] Also pending before the Court is Plaintiff's Motion to Appoint Counsel. ECF No. 21. The Court has already denied two previous requests for court-appointed counsel because Plaintiff had failed to attach the required Financial Affidavit (AO 239) form. *See* ECF Nos. 17 & 20. Again, Plaintiff did not submit the required form along with her most recent motion. Thus, the Motion to Appoint Counsel is DENIED.

[2] The following Complaint facts are taken as true and read most favorably to the plaintiff. *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). Also, because the parties have attached documents from the EEO administrative proceedings, the Court considers the information therein as integral to the Complaint. *See Tang v. Becerra*, No. SAG-21-2739, 2022 WL 4465899, at *2 n.1 (D. Md. Sept. 26, 2022) (considering EEO documents attached to motion to dismiss without converting it into one for summary judgment); *Draughn v. Wormuth*, No. RDB-20-3625, 2021 WL 5742236, at *2 n.2 (D. Md. Dec. 1, 2021) (same).

at 5, 7.  Occasionally, Murray requested and received short and long-term medical leave on account of her condition.  ECF No. 13-2 at 1 n.1.

Beginning in February 2011, Murray experienced a series of setbacks at work.  ECF No. 1 at 5, 6.  After she returned from a period of medical leave, she was not allowed to work her previous night shift schedule.  ECF No. 13-2 at 1.  Nor was she allowed to pursue various opportunities for career advancement, to include working with "Dr. Fontana" and taking "charge nurse classes."  ECF No. 1 at 5.  In September 2012, Murray was wrongly accused of "cursing and screaming" at work.  *Id.*  In December 2012, she received notice of a proposed five-day suspension.  *Id.*; ECF No. 13-2 at 2.

On March 6, 2013, Murray filed a formal Equal Employment Opportunity ("EEO") complaint, alleging claims of disability discrimination, hostile work environment, and retaliation.  ECF No. 13-2 at 1-2.[3]  The agency denied three of Murray's claims as time-barred and investigated the remaining claims.  *Id.*  Murray next requested a hearing before an administrative judge with the Equal Employment Opportunity Commission ("EEOC"), which was set for October 27 through 29, 2016.  ECF No. 1 at 5.

While the EEOC matter was still pending, Murray was accused of sleeping on duty.  NIH placed her on administrative leave with pay for nine months, to begin September 9, 2016.  *Id.*  Murray, in turn, asked to withdraw her administrative hearing without prejudice.  ECF No. 13-3.  The administrative judge granted Murray's request on October 20, 2016, and gave her until March 15, 2017, to petition for reinstatement of the hearing.  *Id.*

---

[3] Murray appears to have filed her EEO complaint with the Office of Equal Opportunity and Diversity Management within the Department of Health and Human Services ("HHS").  *See* ECF No. 13-2 at 5.  NIH is an agency under HHS.

On December 19, 2016, NIH proposed removing Murray from her position.  ECF No. 1 at 5.  Nothing in the Complaint explains the basis for the proposed removal or the ultimate outcome.  On March 9, 2017, Murray petitioned for reinstatement of her EEOC hearing.  ECF No. 13-4.  But by then, the administrative judge assigned to the matter had retired.  ECF No. 13-5.  Murray never received a new hearing date, and so the EEOC's decision on the 2013 charge was never finalized.  *See* ECF Nos. 13-5 & 13-6.

Evidently, Murray's nine-month administrative leave ran its course, as she seems to have returned to work some time in 2017.  On June 5, 2017, she received a 14-day suspension and was reassigned her from permanent night schedule to regular day shifts.  ECF No. 1 at 5, 7, 8.  Again, the Complaint is silent as to the circumstances surrounding this suspension.  On November 13, 2017, Murray received a letter concerning an unspecified incident that had occurred in July 2017.  ECF No. 1-1 at 2.  NIH terminated Murray on January 12, 2018.  ECF No. 1 at 5.

Thereafter, Murray filed a second formal EEO charge, challenging the December 2016 proposed removal, the June 2017 suspension and removal from night shifts, and the November 2017 letter as discriminatory and retaliatory.  *See generally* ECF No. 1-1.  The agency rejected her allegations and the EEOC confirmed the agency's decision.  *Id.* at 2.  On November 18, 2020, the EEOC issued Murray a right-to-sue letter as to the allegations in this charge.  ECF No. 1-1 at 2; *see also* ECF No. 1 at 7.

Murray, proceeding pro se, next filed this action on February 16, 2021.  Murray used the Court's preprinted complaint form for pro se litigants.  On the form, she lists in chronological and summary fashion the events that comprise the factual bases of her claims.  The Complaint broadly states that Murray is pursuing "retaliation, discrimination and harassment [that] started from 2/2011 until date of termination January 12, 2018."  ECF No. 1 at 5.  The preprinted boxes

on the complaint form also indicate that Murray is contesting "termination of employment,"

"failure to accommodate my disability," "retaliation," and "harassment." *Id.* at 6. Murray seeks

compensatory and punitive damages as well as injunctive relief, asking that NIH be compelled to

expunge her disciplinary history from her personnel file. *Id.* at 8, 9.

On April 8, 2022, after delays associated with service of process, NIH moved to dismiss

the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See generally*

ECF No. 13. Murray did not respond to the motion but did ask for court-appointed counsel.

ECF Nos. 15. Because such appointments are reserved for indigent parties, the Court deferred

ruling and directed Murray to submit a completed financial affidavit on a preprinted form

supplied to her. ECF No. 16. Murray failed to submit the affidavit, so the Court denied the

motion for appointed counsel. ECF No. 17. Murray renewed her request for counsel, but again

did not submit a financial affidavit as directed. ECF Nos. 18 & 19. Accordingly, the Court

denied the request again and granted Murray until December 21, 2022, to respond to NIH's

motion to dismiss. ECF No. 20. The Court also warned Murray that failure to respond to the

motion may result in an adverse decision without further notice. *Id.* Murray never filed a

response, and the deadline for doing so has long passed. Thus, the Court must turn to the merits

of the motion.

## II.     Standard of Review

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the complaint.

*Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006). The Court accepts "the

well-pled allegations of the complaint as true," and construes all facts and reasonable inferences

most favorably to the plaintiff. *Ibarra*, 120 F.3d at 474. To survive a motion to dismiss, a

complaint's factual allegations "must be enough to raise a right to relief above the speculative

level[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). The Court must be able to deduce "more than the mere possibility of misconduct"; the facts of the complaint, accepted as true, must demonstrate that the plaintiff is entitled to relief. *See Ruffin v. Lockheed Martin Corp.*, 126 F. Supp. 3d 521, 526 (D. Md. 2015) (quoting *Iqbal*, 556 U.S. at 679), *aff'd in relevant part*, 659 F. App'x 744 (4th Cir. 2016).

Because Murray proceeds pro se, the Court must read her pleadings charitably and let all potentially viable claims reach the merits. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). But "even a *pro se* complaint must be dismissed if it does not allege a 'plausible claim for relief.'" *Forquer v. Schlee*, No. RDB-12-969, 2012 WL 6087491, at *3 (D. Md. Dec. 4, 2012) (quoting *Iqbal*, 556 U.S. at 679). A complaint must "permit the court to infer more than the mere possibility of misconduct based upon its judicial experience and common sense." *Coleman v. Md. Ct. App.*, 626 F.3d 187, 190 (4th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 679) (internal quotes and alterations omitted).

### III. Analysis

#### A. Failure to Exhaust Administrative Remedies

NIH does not dispute that all claims included in the second EEO charge may proceed in this case. ECF No. 13-1 at 7. But NIH does argue that any alleged discriminatory conduct occurring before December 2016 must be dismissed for failure to exhaust administrative remedies. *Id.* at 7-9. Specifically, NIH seems to contend that because Murray failed to exhaust administrative remedies for the conduct captured in the 2013 EEO charge, she cannot pursue those claims here. The Court disagrees.

5

Before filing suit in federal court, a federal employee pursuing discrimination claims must first exhaust administrative remedies. *See Melendez v. Sebelius*, No. WMN-13-2747, 2014 WL 1292221, at *1 (D. Md. Mar. 27, 2014) (citing *Medlock v. Rumsfeld*, 336 F. Supp. 2d 452, 462 (D. Md. 2002)). The exhaustion requirement minimizes "judicial interference with the operation of the federal government" and allows the "agency the opportunity to right any wrong it may have committed." *Austin v. Winter*, 286 F. App'x 31, 35 (4th Cir. 2008) (internal quotations and citations omitted). While not jurisdictional, exhaustion is a prerequisite for pursuing the claim in this Court. *See Fort Bend Cnty., Tex. v. Davis*, 139 S. Ct. 1843, 1850-51 (2019).

Applicable here, employees filing complaints against the government must follow the process set forth in 29 C.F.R. Part 1614. *See Gorrasi v. Azar*, No. CCB-20-2389, 2021 WL 4458996, at *6 (D. Md. Sept. 29, 2021) (citing *Zografov v. V.A. Med. Ctr.*, 779 F.2d 967, 968-69 (4th Cir. 1985)), *aff'd*, No. 21-2191, 2022 WL 6901173 (4th Cir. Oct. 12, 2022). After the employee files her formal complaint, the agency is required to complete an investigation within 180 days. 29 C.F.R. §§ 1614.106(e) & 1614.108(e)-(f). At the conclusion of the investigation, the employee "has the right to request a hearing and decision from an administrative judge" or may request an immediate final decision. 29 C.F.R. §§ 1614.106(f) & 1614.106(h). If the employee requests a hearing, the administrative judge is required to issue a decision within 180 days of receiving the formal complaint. 29 C.F.R. § 1614.109(i). *See also* 29 C.F.R. §§ 1614.109(b) & 1614.109(g) (alternatively, the administrative judge may dismiss the EEO charge or enter summary judgment). Within 40 days of receiving the administrative judge's decision, the agency must then issue a final order, which notifies the employee of her right to sue in

federal court.  29 C.F.R. § 1614.110(a).[4]  If the agency fails to issue the final order, "then the decision of the administrative judge shall become the final action of the agency."  29 C.F.R. § 1614.109(i).  The employee may file suit in federal court within 90 days of receiving the final agency decision or, if the agency has not taken final action, after 180 days from the filing date of the formal complaint.  29 C.F.R. § 1614.407.

NIH recognizes that the EEOC engaged in "procedural irregularity" when it failed to adjudicate the 2013 EEO complaint in accordance with these regulations.  *See* ECF No. 13-1 at 8.  Murray opted for a hearing before an administrative judge, who essentially suspended resolution until not later than March 15, 2017.  *See* ECF No. 13-3.  Next, Murray timely requested the hearing be rescheduled.  The agency, however, failed to schedule the hearing, and so, through no fault of her own, Murray never received a final agency decision.

This error should not and does not bar suit here.  Because Murray diligently pursued her 2013 EEO charge for roughly five years, the Court will allow her claims to proceed.  *See Wilson v. Pena*, 79 F.3d 154, 166 (D.C. Cir. 1996) ("Once a complainant files a complaint or appeal and cooperates with the agency or EEOC for 180 days, [s]he is not required to take any further action to exhaust [her] administrative remedies."); *see also Spearman v. City of Annapolis*, No. JKB-21-1779, 2022 WL 316641, at *5 (D. Md. Feb. 1, 2022) ("The EEOC's failure actually to issue the [right-to-sue] notice cannot defeat the complainant's statutory right to sue in the district court, for a Title VII complainant is not charged with the EEOC's failure to perform its statutory duties.") (internal citation and brackets omitted).

The Court next turns to the merits of the claims.

---

[4] In the event the agency dismisses some but not all claims in a formal EEO complaint, that determination "is not appealable until final action is taken on the remainder of the complaint."  29 C.F.R. § 1614.107(b).

### B.  Hostile Work Environment

Because Murray is suing the federal government, the Rehabilitation Act of 1973, 29

U.S.C. § 701 *et seq*., applies.  *See Brown v. Henderson*, 6 F. App'x 155, 156 (4th Cir. 2001).[5]

As to the harassment claim, NIH contends that no complaint facts make plausible that Murray's

work environment was sufficiently hostile, or that any claimed mistreatment was on account of

her disability.  ECF No. 13-1 at 9.

A hostile work environment claim survives dismissal where some complaint facts make

plausible that (1) the plaintiff suffered from a recognized disability; (2) she was subjected to

unwelcome harassment on account of that disability; (3) the harassment was sufficiently severe

or pervasive to alter a term, condition, or privilege of employment; and (4) liability is imputable

to the employer.  *Fox v. Gen. Motors Corp.*, 247 F.3d 169, 177 (4th Cir. 2001); *see also Pueschel

v. Peters*, 577 F.3d 558, 565 (4th Cir. 2009).  Notably, a hostile work environment claim will

only succeed when the workplace is "permeated with discriminatory intimidation, ridicule, and

insult" such that the employee's conditions of employment are altered.  *Pueschel*, 577 F.3d at

565  (quoting *Harris v. Forklift Sys., Inc*., 510 U.S. 17, 21 (1993)).  By contrast, "simple teasing,

offhand comments, and isolated incidents (unless extremely serious)" will not give rise to a

hostile work environment harassment claim.  *EEOC v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315

(4th Cir. 2008) (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)).

When viewing the Complaint facts most favorably to Murray, she suffered from a

medical condition that plausibly could be construed as a qualifying disability.  ECF No. 1-1 at 1.

The Complaint also chronicles a series of incidents where Murray had been denied certain

---

[5] The Complaint makes express reference to the Americans with Disabilities Act.  ECF No. 1 at 4.  The Court recognizes that Murray proceeds pro se, and that "[t]he scope of liability under the ADA is generally the same as that under the Rehabilitation Act," *Wood v. Md. Dep't of Transp.*, 732 F. App'x 177, 180-81 (4th Cir. 2018) (citation omitted).  Thus, the Court construes the claims as brought under the Rehabilitation Act.

employment opportunities and accused of sleeping and "cursing and screaming" while on duty. ECF No. 1 at 5. But nothing in the Complaint makes any connection between the conduct she experienced and her claimed disability. To be sure, Murray suffered from a disability contemporaneous to the difficult job situation she faced. But mere correlation does not equal causation. Thus, because no Complaint facts make plausible a connection between her disability and the events which Murray claims made her environment a hostile one, dismissal is granted on this basis alone.

Alternatively, and equally fatal, the Complaint does not explain how Murray's experiences amounted to a workplace "permeated with intimidation, ridicule and insult." *Pueschel*, 577 F.3d at 565. This is especially so when considering the large gaps in time and summary fashion in which the events are described. Thus, because the averred facts, even viewed most favorably to Murray, do not make plausible that her workplace was sufficiently hostile, the claim must be dismissed on this ground as well.

The Court next addresses the allegations of discrimination.

### C. Discrimination

To proceed on a disability discrimination claim, the complaint must include some facts which plausibly show that plaintiff suffers from a disability, was qualified for her job, and suffered an adverse employment action "solely because of [her] disability." *Rock v. McHugh*, 819 F. Supp. 2d 456, 470 (D. Md. 2011) (citing *Doe v. Univ. of Md. Med. Sys. Corp.*, 50 F.3d 1261, 1265 (4th Cir. 1995)). Although not required, a plaintiff may establish an inference of discrimination by identifying similarly situated employees—or comparators—who received more favorable treatment. *See Prosa v. Austin*, No. ELH-20-3015, 2022 WL 394465, at *26 (D. Md. Feb. 8, 2022) (citing *Swaso v. Onslow Cnty. Bd. of Educ.*, 698 F. App'x 745, 747 (4th Cir.

2017)).  Where a plaintiff uses employee comparators to establish discriminatory intent, the complaint must make plausible that the plaintiff and comparator employees are "similarly situated in all relevant respects[,]" meaning they "dealt with the same supervisors, were subject to the same standards and engaged in the same conduct[.]"  *Id.* at *28 (internal brackets, quotations, and citations omitted).

NIH wisely does not dispute that Murray has experienced potentially adverse employment actions.  The Complaint identifies instances in which she was denied training and work experience that would have allowed her to "better [her] career"; faced multiple suspensions; and was ultimately terminated.  ECF No. 1 at 5, 7-9.  But no other facts make the connection between these adverse actions and her disability.  Although the Complaint avers that "NIH was aware of my upcoming surgery prior to my termination due to disability," no facts reflect *how* those responsible for the adverse actions knew of her disability, or how the but-for cause of her termination was her disability and not some other legitimate employment reason. Likewise, although the Complaint identifies a time where another employee "was taking same medication as me but allowed to take it at work[,]" which suggests Murray was not permitted the same accommodation, the Complaint gives no other detail that makes plausible Murray was similarly situated to this employee giving rise to permissible inference of discrimination.  *Id.* at 7.  For these reasons, the disability discrimination also fails.

### D.  Failure to Accommodate

The Court turns next to Murray's accommodation claim.  For the claim to survive dismissal, the complaint facts must make plausible that (1) the plaintiff suffers from a disability; (2) the employer was aware of her disability; (3) with reasonable accommodation the plaintiff could perform the essential functions of her job; and (4) the employer refused to make such

reasonable accommodations. *Lewis v. Gibson*, 621 F. App'x 163, 164 (4th Cir. 2015) (citing *Wilson v. Dollar Gen. Corp.*, 717 F.3d 337, 345 (4th Cir. 2013)).  Again, the Complaint facts are simply too barebones to make this claim plausible.

No Complaint facts indicate when, if ever, NIH became aware of Murray's disability. Although the Complaint generally states that NIH was aware of her surgery and hospitalization, that she had important doctor appointments, and that she took medical leave at times (ECF No. 1 at 5, 9), this alone does not make plausible that the agency knew the nature of Murray's disability.  Nor does the Complaint make plausible that certain reasonable accommodations would permit Murray to perform the essential functions of her position.  Thus, the Complaint fails to plausibly aver that there was a reasonable accommodation that NIH refused to extend to Murray.  The claim must be dismissed.

### E.  Retaliation

Last, the Court turns to the sufficiency of the retaliation cause of action.  To proceed on this claim, the complaint facts must make plausible that the plaintiff had engaged in activity protected under the Rehabilitation Act and that, as a result, the employer took adverse action against her. *Rhoads v. F.D.I.C.*, 257 F.3d 373, 392 (4th Cir. 2001); *Causey v. Balog*, 162 F.3d 795, 803 (4th Cir. 1998).  Although a causal connection between the protected activity and adverse action may be inferred by "sufficient temporal proximity[,]" *Prosa*, 2022 WL 394465, at *33 (citing *Johnson v. United Parcel Serv., Inc.*, 839 F. App'x 781, 784 (4th Cir. 2021)), not so when a "lengthy time lapse" exists between the two. *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 501 (4th Cir. 2005) (quoting *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 657 (4th Cir. 1998)).  Certainly, where a plaintiff engages in protected activity after the adverse action forming the basis of the retaliation claim,

11

then, logically, retaliation fails as a matter of law.  *Rhodes v. Montgomery Cnty. Dep't of Corr.*
*& Rehab.*, No. 12-cv-03172-AW, 2013 WL 791208, at *10 (D. Md. Mar. 1, 2013).

Little doubt exists that NIH took adverse action against Murray.  She was placed on
administrative leave in September 2016, suspended in June 2017, and terminated in January of
2018.  ECF No. 1.  Equally clear is that Murray engaged in protected conduct.  She filed her first
formal EEO charge in March 2013, which she pursued in some form or fashion through her
termination in 2018.  ECF Nos. 13-2, 13-3, 13-4, & 13-5.  But given that the totality of the
alleged conduct spans roughly five years and is summarily chronicled in a series of bullet points
appended to a form complaint, it is near impossible to discern which alleged adverse action had
been in response to conduct protected under the Rehabilitation Act.  That is not to say Murray
could never make the temporal connection plausible.  But the claim pleaded currently does not
suffice and must be dismissed.

## IV.   Dismissal with or Without Prejudice

Whether to dismiss claims with or without prejudice remains well within the district
court's discretion.  *See Weigel v. Maryland*, 950 F. Supp. 2d 811, 825-26 (D. Md. 2013) (citing
*180s, Inc. v. Gordini U.S.A., Inc.*, 602 F. Supp. 2d 635, 638-39 (D. Md. 2009)).  Generally, when
a plaintiff has not been afforded an opportunity to amend the complaint, dismissal should be
without prejudice.  *Cosner v. Dodt*, 526 F. App'x 252, 253 (4th Cir. 2013).

Because Murray proceeds pro se and has not previously requested leave to amend her
complaint, the Court dismisses the claims without prejudice.  The Court will grant Murray 28
days from the date of this Opinion and accompanying Order to file a proposed amended
complaint that addresses the above-described pleading deficiencies.  Failure to file a proposed

amended complaint will result in the Court dismissing the claims with prejudice and without further notice to Murray.

**V.      Conclusion**

Based on the foregoing, Defendant National Institutes of Health's motion to dismiss the Complaint is GRANTED.  The claims are dismissed without prejudice.  Plaintiff Dianne Murray shall be given 28 days to file a proposed amended complaint to address the pleading deficiencies discussed in this decision.  If Murray fails to so file, the claims will be dismissed with prejudice and without further warning.  A separate Order follows.

February 15, 2023                              /s/
Date                                                    Paula Xinis
                                                            United States District Judge